## CLARK *v.* HINDMAN.

### 79 Pac. 56.

REFORMATION OF DEED—CONSIDERATION.

1. An agreement to pay part of the cost of a building to be constructed on a designated lot is a sufficient consideration to sustain a suit to reform an error in the description, or, what is the same thing, to specifically perform by executing a corrected deed.

FAILURE TO FILE EQUITABLE CROSS BILL AS AN ESTOPPEL.

2. The failure of a defendant to present certain facts by cross bill, as an equitable defense to a law action, under Section 391 of B. & C. Comp., does not estop such defendant from subsequently asserting the same facts as a cause of an independent suit to obtain appropriate relief.

ESTOPPEL OF GRANTOR BY REPRESENTATIONS.

3. A grantor who has by his own conduct or statements influenced his grantee to so act with relation to the property conveyed that he will be injured if the grantor changes his position in the matter, is bound by his original acts, and estopped to claim otherwise.

This case affords an illustration of the rule: A father, in order to locate the eastern boundary of premises intended to be conveyed by him to his daughter, made certain measurements, pointed out to her the line which he supposed formed the eastern boundary of the land, and executed a deed to her based on such measurements. He thereafter put up a partition fence on the line so located, and in the absence of the daughter again measured the land, selected the site for the house, and superintended its entire construction thereon, she paying part of the cost. *Held,* that the father was estopped to subsequently deny that the line so pointed out and established was the true eastern boundary of the land intended to be conveyed.

From Baker: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Phila B. Clark against W. C. and Tollie M Douthitt-Hindman to reform a deed and to enjoin the enforcement of a judgment. The facts are that the defendant W. C. Hindman, being the owner of a block of land in Baker City, conveyed a part thereof, September 7, 1891, to his daughters, the plaintiff, Phila B. Clark, and Grace C. Hindman, the deed expressing a consideration of $500, and describing the premises as follows: "Bounded on the south by Court Street and on the west by Sixth Street, beginning at the southwest corner and running north 108 feet; thence east 86 feet; thence south 108 feet; thence west 86 feet to the place of beginning, the same in Boyd's First Addition." The plaintiff, having secured her sister's interest in the premises, erected a building thereon, a part of which, it is claimed by the defendants, extends east of the boundary of her land. Her father, having remarried, executed a deed for the remainder of his block to his wife, who commenced

an action against plaintiff and recovered judgment for twenty feet off the east side of the premises claimed by her, and this suit was instituted to prevent the enforcement of that judgment. The complaint states the facts hereinbefore detailed, and alleges that plaintiff erected her house on the site selected therefor by her father, under whose supervision it was constructed; that by mutual mistake the deed so executed September 7, 1891, erroneously describes the land as being in Boyd's First Addition to Baker City, when no such addition thereto ever existed; that at that time, and prior thereto, plaintiff's father intentionally represented to her and her sister, Grace, that a post forming a fence corner was the place of beginning designated in the deed; that having no knowledge to the contrary, nor means of ascertaining the fact, but relying upon his statements and believing them to be true, they paid him $500 for the premises; that he measured the specified distance from such fence corner, and pointed out to them as their east boundary a line on which he constructed a partition fence; and that, by reason of such facts, her father and those claiming under him are and should be estopped to assert any claim or color of title to the land described in the judgment rendered against plaintiff.

The answer denies the material allegations of the complaint, and for a separate defense alleges that the deed was executed to plaintiff and her sister in pursuance of their agreement to pay one half the cost of erecting a house on the premises; that he put up a building on the western part thereof, incurring an expense of about $1,000, of which sum they did not pay more than $300; that it was intended by the parties to such deed to convey the land specified therein out of the southwest corner of his block, particularly describing it; that at the time the deed was executed the defendant believed that such block extended to the east line of Sixth Street, which was not then, nor has it since been, definitely located. For a further defense, it is averred that the deed described in the complaint was executed without consideration. The new matter in the answer having been denied in the reply, the cause was referred and the testimony taken, from which the court made findings, and decreed

a reformation of plaintiff's deed so as to describe the premises as follows: "Beginning at the southwest corner of the Hindman Block in Baker City, Oregon, thence north 108 feet; thence east 86 feet; thence south 108 feet; thence west 86 feet to place of beginning"; and that so much of the judgment rendered against plaintiff as interferes with the description last above given in any manner be enjoined, and both parties appeal.

MODIFIED.

For plaintiff there was a brief and an oral argument by *Mr. William Smith.*

For defendants there was a brief and an oral argument by *Mr. Francis M. Saxton.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the court.

1. It is contended by defendants' counsel that, although the deed executed by Hindman to his daughters expresses a pecuniary consideration, they parted with nothing of value capable of being estimated in money, and, as the conveyance was intended as a donation, a suit to reform the deed cannot be maintained. The legal principle insisted upon finds expression in the statement that the specific performance of a contract to convey real property will not be enforced in equity unless it is supported by a valuable consideration: *Modisett* v. *Johnson,* 2 Blackf. 431; *Seymour* v. *Delancey,* 6 Johns. Ch. 222; *Vasser* v. *Vasser,* 23 Miss. 378; *Aston* v. *Robinson,* 49 Miss. 348; *Curlin* v. *Hendricks,* 35 Tex. 225. A court of equity will not interfere against a grantor, in favor of a volunteer, to correct a mistake or to reform a defective conveyance. The reason for this rule is stated by the court in *Adair* v. *McDonald,* 42 Ga. 506, as follows: "If there is a mistake or a defect, it is a mere failure in a bounty, which, as the grantor was not bound to make, he is not bound to perfect." Notwithstanding a diversity of opinion exists as to the right of a grantor to show a consideration different in kind from that expressed, evidence has been held admissible in this state to prove that a conveyance of real property by a deed reciting a valuable consideration was a gift, intended as an advancement, not to defeat the conveyance, but to show from

whence the consideration came, the money being treated as the original gift with which the land was purchased: *Velten* v. *Carmack,* 23 Or. 282 (31 Pac. 658, 20 L. R. A. 101). The rule announced in that case, however, is not applicable to the facts involved herein, for it will be remembered that the answer admits that plaintiff and her sister paid their father the sum of $300 on account of the house which he built on the premises conveyed to them. The construction of the house made it a part of the realty to which it was attached, and, having been put up after the land was conveyed, the building became their property. Their agreement to pay one half the cost of erecting a house on the land to be conveyed to them was an executory consideration for the deed, which is sufficient to support it, and a failure on their part to perform the terms of their agreement does not invalidate the instrument, but merely furnishes their father a right of action against them for the consideration stipulated: *Lake* v. *Gray,* 35 Iowa, 459; *Gray* v. *Lake,* 48 Iowa, 505. Invoking the maxim that "Equity looks to the intent rather than to the form" (Pomeroy, Eq. Juris. § 363), the agreement entered into between Hindman and his daughters was in effect that he would erect a house on the land designated, and convey the premises to them, in consideration of their stipulation to pay one half the cost of the building, which afforded a valuable consideration for the deed.

2. It is also maintained by defendants' counsel that, in the action of ejectment brought against her, plaintiff had an opportunity to set up, by way of cross-bill, the facts now relied upon as the basis of equitable relief, but, not having done so, she is estopped by the judgment rendered therein. Our statute allows an equitable defense by cross-bill in actions at law (B. & C. Comp. § 391), and in construing this provision it has been held that a party may rely upon a legal defense without being thereby precluded from afterwards asserting his equitable title in an original suit: *Hill* v. *Cooper,* 6 Or. 181; *Spaur* v. *McBee,* 19 Or. 76 (23 Pac. 818); *South Port. Land Co.* v. *Munger,* 36 Or. 457 (54 Pac. 815, 60 Pac. 5).

3. Considering the case on its merits, the transcript shows that the southwest corner of block 14 of the United States townsite of Baker City has been established and is evidenced by an iron pipe driven in the ground. John Hagel, a surveyor, as defendants' witness, testified that on July 3, 1903, he measured west from this pipe 627 feet, as he construes the distance called for in Hindman's deed, at which point he located the southwest corner of the Hindman Block, and, continuing the line west 15.75 feet, he reached a corner of a fence running north; that, retracing the line 19.5 feet, he found an old fence post, and also saw evidence of a fence originally extending north therefrom; and that, measuring east from the corner so located 86 feet, the distance called for in plaintiff's deed, he found that the east wall of her house extends upon Mrs. Hindman's land 7.9 feet, the roof projecting about 18 inches further. The testimony of Grace C. Hindman, which was taken by deposition, shows that she was in Baker City when the house in question was built, but too ill to direct the carpenters doing the work; and that her father selected the site for the building, pointed out where the pillars supporting the corners were to be placed, and superintended the construction of the house. The deposition of Mrs. C. L. Kurtz shows that she was present when the site for plaintiff's house was selected, and saw her uncle, the defendant W. C. Hindman, measure the ground with a tape line and mark with a stick the points where the corners were to be placed, but she does not remember seeing pegs driven at the angles indicated; that her uncle superintended the construction of the building, where he spent most of his time each day until it was finished; and that he conferred with the witness as to the proper place to put a door in the house, and as to the color of the paint to be used thereon. Mrs. Anna Rutan testified that, immediately prior to commencing the work on the house spoken of, she saw W. C. Hindman measuring the lot on which it was to be placed, and, in answer to her inquiry as to what he was doing, he informed her that plaintiff wanted him to build a house for her. William Bostwick, a paper hanger, testified that W. C. Hindman showed him the different kinds of paper which the witness used in cover-

ing the walls of the various rooms of plaintiff's house. Eliza Barnes, Charles Barnes, and William Cunningham each testified that Hindman superintended the construction of his daughter's house.

When this house was built, plaintiff was not at Baker City, and she testifies that she did not select the site for the building nor have anything to do with its construction, except to pay the cost thereof, and not until about three years after it was finished did she know that it encroached upon her stepmother's land. It further appears that, prior to the building of plaintiff's house, Hindman put up a wire fence on what was supposed to be the boundary between his land and that of his daughter. This fence was removed so that the house could be erected, and plaintiff testified that her father, in referring to this fence, said: "That is the boundary between us." The deposition of Grace C. Hindman shows that this fence was put up prior to conveying her interest in the land to her sister, and in speaking of her father she testifies as follows: "He built a wire fence between his property and our lots. He took me to the place and showed me this wire fence, and said: 'This fence divides your and Phila's (plaintiff's) lots from mine.'" The defendant W. C. Hindman, in referring to plaintiff's statements as to what he said about the fence, testifies as follows: "I told her I supposed that that wouldn't be far from the line, but that there was no corners established at all, and explained it to Grace, also, when I gave her the deed, that the corner wasn't established." He further testified that he did not know any part of plaintiff's house was off her land until nearly a year after it was built.

It appears from the transcript that in the action brought by the defendant Mrs. Hindman, as plaintiff, against the plaintiff, Phila B. Clark, as defendant, a stipulation was entered into by the parties authorizing C. M. Foster, the county surveyor of Baker County, to determine the location of the house in question, and having done so, according to his theory, from an inspection of the deeds constituting the chain of title, he made a report of his survey, a copy of which was offered in evidence on the trial of this cause. This shows that on June 21, 1875, one J. M.

Boyd conveyed to W. W. Ellis a block of land beginning at a point 96 feet west of the southwest corner of block 14, in the United States townsite of Baker City, thence west 216.5 feet to the southwest corner, etc. Ellis, on December 24, 1875, conveyed to Parmela Boyd, the wife of J. M. Boyd, a tract of land beginning at the southeast corner of the Academy Block in Baker City, thence west 216.5 feet, thence south 125 feet to the southwest corner, etc. J. M. Boyd and wife, on June 30, 1877, conveyed to the defendant W. C. Hindman a block of land beginning at a point 80 feet west of the southwest corner of the block then owned and occupied by Parmela Boyd, thence west 216.5 feet to the southwest corner, etc. A plat of the blocks mentioned was also offered in evidence, an examination of which shows that the east line of the Academy Block is parallel with and 114 feet west of the west line of block 14 of the United States townsite of Baker City. It will be remembered that Boyd's deed to Ellis places the southeast corner of the premises conveyed at a point ninety-six feet west of the southwest corner of block 14. The deed from Ellis to Boyd's wife makes the northeast corner of her block identical with the southeast corner of the Academy Block, thus placing the premises described in her deed eighteen feet west of the land conveyed to Ellis. This discrepancy has been the cause of the uncertainty concerning the southwest corner of the Hindman Block. The judgment by which Mrs. Hindman recovered twenty feet off the east end of plaintiff's land probably resulted from the conclusion that the variance in the description of the premises was equal to the award, instead of eighteen feet as indicated.

The plaintiff testified that when she and her sister purchased the land from their father it was fenced on the south and west; that he and their brother measured with a tape line east eighty-six feet from a tree, supposed to be the southwest corner of the premises intended to be conveyed, and the description given in their deed was taken from the measurement thus made; that she secured the deed under the belief that the land measured by her father and brother in her presence settled the boundaries thereof; that her father built a partition fence on the line located by

such measurement; that in 1899 she first learned that any controversy existed in relation to the boundaries of her land, and thereupon moved her west fence about fifteen or twenty feet further west, and placed it in line with a fence her father had built north of her land, taking in a part of the street, which was then eighty-four feet wide, though the plat thereof showed a width of only sixty feet. The defendant testified that the distance is five feet and four inches from the post once forming the corner of the old fence, east to a tree, the circumference of which is sixty inches, but when it was set out it was very small. In referring to this tree, the witness says: "I considered it as no corner. I couldn't have planned it for a corner when I wasn't sure where the corner was."

The foregoing is a fair summary of the testimony given at the trial, the preponderance of which, in our opinion, shows that the defendant W. C. Hindman, in order to locate the east boundary of the premises intended to be conveyed to his daughters, measured east eighty-six feet from the tree standing near the post that then formed the corner of the old fence; that he pointed out to his daughters the line which he supposed formed the east boundary of their land, and, based on such measurement, he executed the deed to them; that he thereafter put up a partition fence on the line thus located; that in plaintiff's absence he again measured her land, selected the site for her house, and superintended its entire construction. Hindman, as a witness in his own behalf, denies each of these facts, but, as he is eighty-one years old, his contradictory statements probably result from a defective memory, due to his advanced age, rather than to his interest as a party in the decision to be rendered in this suit.

Based on these facts, which we think are established, the question to be considered is whether or not the acts of the defendant W. C. Hindman, performed in ignorance of the true location of the southwest corner of his block, and his representations in relation to the supposed east boundary of plaintiff's land, made without intent to deceive his daughters, estop his wife, as a subsequent grantee, to assert title to the land which she claims has been encroached upon by plaintiff's house. "A party," says a

text writer, "is estopped to deny the line between his own and the adjoining land to be the true line if he has sold and conveyed land up to such line, has pointed it out as the true line, and has induced the defendant to purchase up to such line": 2 Hermann, Estoppel, § 1133. The plaintiff and her father being equally innocent with respect to the location of the east boundary of the land intended to be conveyed, any loss caused by erecting the house on the site selected by him ought not to be borne by her: *Buchanan* v. *Moore,* 13 Serg. & R. 304 (15 Am. Dec. 601). When a party, under a misapprehension of his legal rights, by word or act, places another party in an attitude of hostility to such rights, he must submit to the loss which his conduct has occasioned: *Fahie* v. *Pressey,* 2 Or. 23 (80 Am. Dec. 401). Hindman, in ignorance of his own title, evidently encouraged plaintiff in expending money to build her house, and, having done so, he and those claiming under him cannot subsequent thereto assert such title to her injury: *Storrs* v. *Barker,* 6 Johns. Ch. 166 (10 Am. Dec. 316).

In discussing the rule announced in that case, Mr. Justice ANDREWS, in *Trenton Banking Co.* v. *Duncan,* 86 N. Y. 221, says: "It is not necessary now to consider what are the limitations, if any, to this doctrine. But, as a general rule, it would seem to be just that, if a person does an act upon the suggestion or request of another, the latter shall not be permitted to avoid the act when it turns out to the prejudice of an antecedent right or interest of his own, although the advice on which the other party acted was given innocently and in ignorance of his claim. The authorities establish the doctrine that the owner of land may, by an act in pais, preclude himself from asserting his legal title. But it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light or doubtful character. To authorize the finding of an estoppel in pais against the legal owner of land, there must be shown, we think, either actual fraud, or fault or negligence

equivalent to fraud, on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in *Storrs* v. *Barker,* 6 Johns. Ch. 166 (10 Am. Dec. 316), as to render it just that, as between him and the party acting upon his suggestion, he should bear the loss. Moreover, the party setting up the estoppel must be free from the imputation of laches in acting upon the belief of ownership by one who has no right."

No definition of an equitable estoppel can well be formulated that will include all cases that should properly come within its purview: *Horn* v. *Cole,* 51 N. H. 287 (12 Am. Rep. 111). In commenting on this subject in *McGovern* v. *Knox,* 21 Ohio St. 547 (8 Am. Rep. 80), it is said: "Probably no inflexible rule can be laid down defining the several conditions of its application in all cases. One condition, however, is fundamental and essential in every case, which is that the particular right or interest invoking the protection of the doctrine must have been influenced by the conduct, the encouragement, concealment, or denial of him who, or with whom one in privity, is sought to be estopped. Only parties and privies are affected by it, or can invoke its interposition." In *Rutherford* v. *Tracy,* 48 Mo. 325 (8 Am. Rep. 104), where the facts were similar to those in the case at bar, Mr. Justice WAGONER, in deciding the case, says: "If the grantor showed the purchaser the wrong lines, and was cognizant of his action on that information, and stood silent while a house was being erected and money expended, he directly led the purchaser into a line of conduct prejudicial to his interest, and should not now be heard in alleging anything to the contrary. Such acts would constitute an estoppel in pais."

Applying the legal principles thus announced to the facts involved herein, we think plaintiff is clearly entitled to the relief prayed for in her complaint: Her father having measured east from the tree in question 86 feet to locate the limit of her land, the line thus pointed out to her before her deed was executed, and west of which her house was built under his supervision, must be established as the true boundary on the east side of her premises. It will be remembered that Hagel testified that from the

corner of the fence, as it stood July 3, 1903, east to the corner of the Hindman Block as located by him, the distance is 15.75 feet, and that from such fence corner east to the old fence post it is 19.5 feet. The old post is therefore 3.75 feet east of the corner of the Hindman Block as located by Hagel. From the old post east to the circumference of the tree, which is 60 inches, the distance, as testified to by W. C. Hindman, is five feet and four inches. Assuming this tree to be 20 inches in diameter, the distance from the old post east to the center of the tree is 6.16 feet, and measuring east from the center of this tree 86 feet, or 95.91 feet east of the southwest corner of the Hindman Block as located by Hagel, fixes the southeast corner of plaintiff's land. As this tree must inevitably decay, the boundaries of her premises should be more permanently established. Her deed will therefore be reformed so as to describe the land intended to be conveyed by her father, as follows: Beginning at a point on the north boundary of Court Street, in Baker City, Oregon, 531.09 feet west of the southwest corner of block No. 14, in the United States townsite of that city; thence north 108 feet; thence west to the east boundary of Sixth Street, in Baker City; thence south 108 feet; and thence east to the place of beginning.

So much of the judgment secured by the defendant Tollie M. D. Hindman against the plaintiff herein, Phila B. Clark, as in any manner interferes with the description last above given, the defendants herein, and all persons claiming by, through, or under them, are perpetually enjoined from enforcing. With this slight modification in the description of the premises, the decree appealed from is otherwise affirmed.

MODIFIED.