## TALBOT *v.* SMITH.

[107 Pac. 480; 108 Pac. 125.]

BOUNDARIES—EVIDENCE—SURVEYS.

1. Under a rule of the United States General Land Office, providing that a "missing quarter section corner must be re-established equidistant between the section corners marking the line, according to the field notes of the original survey," a survey by a county surveyor which does not locate the quarter section line is insufficient to establish a boundary dependent on such line.

BOUNDARIES—DESCRIPTION—CONSTRUCTION.

2. Section 867, B. & C. Comp., providing that, where permanent and visible monuments are inconsistent with the measurements, the monuments are paramount to measurements, has no application to a description in a deed which does not mention any monuments.

BOUNDARIES—DESCRIPTION.

3. A description of land by courses and distances, without mentioning monuments, is not controlled by monuments subsequently erected.

BOUNDARIES—ESTABLISHMENT—ESTOPPEL.

4. The erection of a fence on what was by mistake supposed to be a boundary line does not preclude the landowner from afterward claiming land outside the fence, in the absence of adverse occupancy thereof by another for 10 years under a claim of title.

BOUNDARIES—ESTABLISHMENT—SURVEY.

5. Where there is conveyed, out of a larger tract of the grantor, a specific quantity of land by metes and bounds, leaving nothing indefinite or uncertain, the grantor can defeat a boundary as fixed thereby, by reason of a subsequent erroneous survey and the consequent setting of stakes inconsistent with the description in the deed, only by showing the grantee has lost part of the conveyed land by some means known to the law, such as an agreement within the statute of frauds, settlement of a disputed boundary, or adverse possession.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Ella Talbot against W. K. Smith and others to quiet title to a piece of ground situated in the Talbot donation land claim in Multnomah County, Oregon. John B. and Sarah Ann Talbot acquired a patent under the donation land law of the United States to the following described lands: Beginning at a point 9.47 chains east of the northeast corner of said section 8, township 1 south, range 1 east, W. M., running thence south 80 chains; thence west 80 chains; thence north 80 chains;

and thence east 80 chains. Thus the north line and the· south line of the claim are approximately on the section lines. In the patent the wife was assigned the south half of the claim, and thereafter, on the 20th day of November, 1856, they conveyed to William P. Watson the following part thereof: "Beginning forty rods west of the northeast corner of section (8) eight in township one south, range one east, running (120) one hundred and twenty rods west, thence south (160) one hundred and sixty rods', thence east (80) eighty rods, thence north (80) eighty rods, thence east (40) forty rods, thence north eighty rods, to the place of beginning, containing one hundred acres, more or less." And afterwards, on December 12, 1868, said John B. Talbot and wife conveyed to C. Beal the following part of said claim: "Commencing and beginning at a stake or corner which is located one hundred and sixty (160) rods west, one hundred and sixty (160) rods south, and eighty (80) rods east of the northeast corner of section eight (8) Tp. one south, range one east in Multnomah County, ·Oregon, the said stake, corner, or beginning place, being the southeast corner of a tract of land sold by the above parties to W. P. Watson, the 28th day of November, 1856, running thence east from said corner or stake twenty rods, thence north eighty rods parallel with the east line of the said Watson tract, thence west twenty rods to the Watson tract, thence south eighty rods along the eastern line of said tract, to the place of beginning." Defendants by mesne conveyances have succeeded to the right and title of said Watson and Beal to so much of the said tracts as conflict with the claim of plaintiff herein, which is described as follows: "Commencing at a point on the half mile line running east and west through section 8, Twp. 1 south, range 1 east, of the Willamette meridian, as now marked on the ground, 128 rods west from the quarter-section corner between sections 8 and 9 in said township, as now marked upon the ground,

thence east along said half-mile line through said section 8, 68 rods, thence north 55.7 feet, thence west 68 rods to a point 64 feet northerly from the point of beginning, thence south 64 feet to the place of beginning."

Plaintiff alleges that she is the owner and in the possession of the last above described land, and asks to have her title thereto quieted.

The defendants deny the material allegations of the complaint, and allege that the ownership of said tract of land is in defendants, and that they have and for more than 10 years last past have had the actual, open, notorious, and exclusive and adverse possession thereof by themselves and their tenants.

The cause was tried upon the evidence, and the trial court found the facts in defendants' favor and rendered a decree accordingly. Plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Granville G. Ames* and *Mr. Cicero M. Idleman,* with oral arguments by *Mr. Ames* and *Mr. Idleman.*

For respondents there was a brief over the names of *Mr. Frederick V. Holman* and *Mr. A. A. Hampson,* with an oral argument by *Mr. Holman.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It may be taken as conceded by plaintiff that the descriptions in the deeds executed by Talbot and wife to Watson and Beal include the ground claimed by her in this suit. As there is neither allegation nor proof to the contrary, plaintiff's principal reliance for recovery is upon surveys of the claim purporting to establish the dividing line between the north half and the south half of the claim, and the assumption that the deeds were not intended to convey any ground south of said division line; also, that the building of the fence by Watson and Beal near the south line of their land established irrevocably

the fence as the south line of their land.  Plaintiff admits that the division line of the claim for which she contends and upon which her recovery here depends is not an east and west line through the center of the claim, but, commencing at the east side of the claim, diverges north of west, and constitutes the north line of the ground she is contending for, and the quarter-section line is the south line thereof, and, to establish the division line of the claim, she offers in evidence the field notes of a survey made on January 15, 1869, by A. J. Stevenson, a county surveyor, and then proceeds to identify the stakes and corners mentioned in said field notes as indicating her·north line.  It does not appear at whose request Stevenson made that survey, but it was not at the request of John B. or Sarah Ann Talbot.  The heading of his field notes is:  "Field notes of the survey through the middle of Section 8, Tp. 1 S., R. 1 East."  It is then stated therein that he commenced at the quarter-section corner between sections 8 and 9 and ran west, setting certain stakes as he advanced as permanent corners, among others, for the southeast and southwest corners of the Beal and Watson tracts, which are probably the stakes for which plaintiff is now contending.  His notes give his last distance at "80 chains to section line, no trace of ¼ post to be found," referring to the quarter-section post on the west line of section 8. This shows that he did not locate the quarter-section line, and renders the survey wholly unreliable.  The General Land Office of the United States provides the method for the subdivision of sections as follows:  "To run straight lines from the established quarter-section corners, United States surveys, to the opposite corresponding corners. The point of intersection of the lines thus run will be the corner common to the several quarter-sections."  It also provides for the re-establishment of lost or obliterated corners.  In case of a quarter-section corner:  "The missing quarter-section corner must be re-established equidis-

tant between the section corners marking the line, according to the field notes of the original survey." See Circular of General Land Office, March 14, 1901. Therefore, before he could locate the quarter-section line, he must find the opposite corresponding quarter-section corners, and, if obliterated, he must re-establish them from the section corners, and, if such a section corner is obliterated, he must also re-establish that in the manner provided by the General Land Office. Therefore Stevenson did not ascertain the quarter-section line, and could not establish any corners abutting on that line (which he was evidently trying to do), until he had located it. Plaintiff's reliance upon this survey is on the assumption that it was on the quarter-section line, as intended by the surveyor, and yet describes the south line as on the quarter-section line. However, regardless of any of the surveys offered in evidence, the descriptions in the deeds are conclusive.

2. The rule that permanent and visible monuments are paramount to measurements has no application here. It only applies to such boundaries and monuments mentioned in the conveyance. It is a statutory provision (Section 867, B. & C. Comp.), and provides:

"The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there is no other sufficient circumstance to determine it. * * (2) When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurements either of lines, angles, or surfaces, the boundaries or monuments are paramount."

3. Where no monuments are mentioned in deeds, the descriptions are not controlled by monuments erected later. John B. and Sarah Ann Talbot owned the whole claim at the time of the execution of these deeds, and knew its dimensions and understood and intended that 160 rods from the north line of the claim would take to the center line of the claim. That they so understood and

intended appears also from the deed to Fort, executed January 30, 1869, the description in which commences at a point 40 rods east of the quarter-section corner on the west side of section 8, and describes a tract south and east therefrom 160 rods square, which it states is the "southwest quarter of the donation claim of John B. and Sarah Ann Talbot." This shows they recognized the quarter-section line as the dividing line of the claim. Thus the south line of the Watson tract and the north line of the Fort tract are identical for a distance of 40 rods, where the tracts are contiguous, and include a portion of the land now claimed by plaintiff. The conclusion is irresistible that the deeds from the Talbots to defendants' grantors take to the middle line of the section, and is conclusive in this case, unless defendants or their grantors have in some manner been deprived of it.

4. It is urged by plaintiff, however, that the line between the north and the south halves of the claim had been surveyed and marked on the ground, and the south boundary of the Watson and Beal tracts were marked on that line. The only surveys of that line were those made by Burrage in September, 1872, and by Hurlburt in December, 1887, neither of which was made for defendants or their predecessors in interest. And the Stevenson survey was not intended as the dividing line of the claim, but the quarter-section line of section 8, which was clearly wrong. All of these surveys were made long after the execution of the deeds. The date of the Henry survey is not disclosed, but plaintiff says it was after the year 1868 and is therefore subsequent to the deeds. It was not an establishment of the center line of the claim, but was only a survey of the tract according to the deed to Watson, and must be presumed to extend the south line of the tract to the center line of the section in the absence of monuments. But no monuments set by him are located or identified now. And nothing in that survey or the fact that it was made

can limit or control the description in the deed. The plea in estoppel, alleged in plaintiff's reply, is only a statement of the titles of Watson and Beal, and that they built a fence on their south line, but contains no element of estoppel. If, by mistake, Watson or Beal built a fence which either supposed to be on the south line of his land, he is not thereby precluded from now claiming land outside of the fence in the absence of adverse occupancy thereof by plaintiff for 10 years under a claim of title, which is neither alleged nor proven. *Sommer* v. *Compton,* 52 Or. 173 (96 Pac. 124: 96 Pac. 1065); *King* v. *Brigham,* 23 Or. 262 (31 Pac. 601: 18 L. R. A. 361). All that is said in plaintiff's brief as to traditional evidence, and as to the presumption arising from the location of the fence, can have but little weight in the face of a deed that is plain, explicit, and unambiguous. There is no testimony tending to show that Talbot and his wife ever questioned the descriptions contained in the deeds to Fort, Watson, and Beal, or that the division line of the claim was other than approximately the quarter section line. And that is what these surveyors were seeking to locate, but no two of them located it on the same line. Plaintiff testified that "there was no discussion about that line or that piece of land until Mr. McQuinn and Mr. Hurlburt were in dispute about dividing the claim equally between Father's half and Mother's half. That survey is the survey we sold from and lived by," meaning the Henry survey, which does not locate the division line. But, wherever the quarter section line or the division line of the claim may be located, it cannot control the descriptions in the deeds.

The decree of the circuit court is affirmed.

AFFIRMED.

Decided April 12, 1910.

ON PETITION FOR REHEARING.

[108 Pac. 125.]

MR. JUSTICE EAKIN delivered the opinion of the court.

By the motion it is suggested that the court is in error in stating that it may be taken as conceded that the descriptions in the deeds include the ground claimed by plaintiff. That the 160 rods south from the north line of the claim, which the deeds designate as the south line of the Watson and Beal tracts, extends to the south line of the land claimed by plaintiff, there is certainly not one word of controversy. Not a witness was called to show where the courses and distances of the descriptions in the deeds would locate the south line of these tracts, and as the donation claim is just a mile square, it must be on the middle line of the claim, and there would be no room for controversy here if such measurements do not extend south of the north line of the tract plaintiff is contending for. Defendants only claim the ground described in their deeds.

Again, it is suggested that Miss Talbot fixes the time of the Henry survey as the time of the sale to Watson. Miss Talbot testified on May 22, 1907, that, "I was 54 years old day before yesterday." The Watson deed was made November 28, 1856, so that she was just 3½ years old at that time. Her recollection now of the time and circumstances of a survey made when she was 3½ years old can hardly be depended on to determine whether it was made before or after the execution of the deed to Watson, for the purpose of contradicting or controlling the description contained in the deed. However, she testified that the survey was made in 1858, but if she meant 1856 yet she says the survey followed the making of the deed to Watson. Therefore the description in the deed has no reference to that survey or its stakes, and such stakes did not become monuments in any manner affect-

ing the description in the deed. Counsel for plaintiff say that her contention is for the location, on the ground, of a line 160 rods south of the north boundary of the Talbot claim, as located at the time of the deed, evidently meaning the Henry survey. But that survey was not made at the time of the execution of the deed. However, plaintiff is entitled to have the line located 160 rods south of the north line of the claim. To defeat the descriptions in the deeds, plaintiff also urges that the fence line or a stake set by some one has been acquiesced in for a long time, and should control. But there never was any dispute as to where the line should be; nor was there any circumstance to call for a settlement of a dispute. Legal agreements as to disputed boundaries are based upon the fact that the true line is not only in dispute, but to some extent undefined and unknown. *Lennox* v. *Hendrix,* 11 Or. 33 (4 Pac. 515). Here there was no dispute, no indefiniteness or uncertainty; nor was there a settlement of a pretended dispute. On the contrary, the grantors conveyed, out of a larger tract, a specific quantity of land by metes and bounds, leaving nothing indefinite or uncertain. And the grantor or his heir now seeks to dispute the description, not by reason of a mistake, but because, by erroneous surveys, stakes were set inconsistent with that description. She can only do this by showing that the grantee has lost part of the land conveyed to him by some means known to the law; such as an agreement within the statute of frauds, settlement of a disputed boundary or adverse possession, none of which has been shown in this case.

As to the description in the deed by Watson to Beal, the point of beginning is: "A stake or corner" identified by courses and distances, but plaintiff is not relying upon this stake or corner, nor is it shown to be a monument controlling the measurements. The description places the south line 160 rods south of the north line of the claim,

and "to contain just 20 acres, no more and no less." The description in the deed from Talbot to Beal commences at a "stake or corner" which is 160 rods south of the north line of the claim, "said stake, corner or beginning place, being the southeast corner of a tract of land sold by the above parties to W. P. Watson," "to contain just 10 acres, no more or less." There can be no doubt as to the meaning of these descriptions; they being specific as to lines and quantity of land conveyed, and the purpose being to make the south line of both tracts conform to the south line of the original Watson tract. No monument is mentioned as a controlling or permanent one. It is said in *Hale* v. *Cottle,* 21 Or. 580, 586 (28 Pac. 901, 902) : "If it appear from the face of the conveyance, in the light of surrounding circumstances, that the courses and distances as given correctly describe the land intended to be conveyed, they will of course prevail," regardless of the monuments mentioned.

The motion is denied.

AFFIRMED : REHEARING DENIED.