Argued June 4, reversed and remanded September 10, 1969

SUMMERS, *Appellant v.* HOLDER ET AL,
*Respondents.*

458 P2d 429

Donald H. Coulter, Grants Pass, argued the cause and filed briefs for appellant.

C. H. Seagraves, Jr., Grants Pass, argued the cause for respondents. With him on the brief were Myrick, Seagraves & Williams, Grants Pass.

Before McAllister, Presiding Justice, and Sloan, O'Connell, Goodwin and Denecke, Justices.

O'CONNELL, J.

This is a suit in equity to enjoin defendants from trespassing upon plaintiff's land. The suit arises out of a boundary dispute resulting from a mistake in establishing the boundary when plaintiff sold to defendants Theodore and Patricia Holder part of a larger tract of land owned by him. Defendants answered by way of a general denial, raised the affirmative defense of estoppel and sought reformation of the deed. Plaintiff appeals from a decree in favor of defendants.

Plaintiff was the owner of a 39.9-acre tract of rural land located about ten miles southwest of Grants Pass. A part of the southern boundary of the tract abuts on U. S. Highway 99. In 1957 plaintiff agreed to sell one acre in the southeast corner of this tract to defendants

Theodore and Patricia Holder. The Holders wanted this property as a site for a restaurant which was to front on U. S. Highway 99. In order to retain access to the unsold portion of his property plaintiff reserved a strip 40-feet wide between the section line forming the east boundary of his land and the parcel to be sold to the Holders.

Before the papers were drawn memorializing the sale the parties went to the site and stepped off the 40-foot strip and also the one-acre parcel. According to plaintiff's testimony this was done simply to obtain a rough approximation of the dimensions of the parcel in order to make sure that there was enough space for and adequate access to the restaurant. The area enclosed by the lines thus marked out exceeded one acre. According to plaintiff the parties had negotiated for the sale of "one acre, not more, not less."

The overage resulted from an error in assuming that the highway was perpendicular to the section line. Proceeding on this assumption, the parties paced off the northern boundary perpendicular to the eastern boundary and the section line thinking that they were running a course parallel to the highway. Since the highway ran in a southwesterly direction from the section line, the northern and southern boundaries of the parcel as paced off diverged as one moved westerly, and the westerly boundary was thus longer than the easterly boundary. This discrepancy between the length of the westerly and easterly boundaries was not then discovered because, proceeding on the assumption that they were pacing off a square parcel with sides approximately 208 feet in length (an acre is embraced by a square with side dimensions of 208.71 feet), the parties, having measured three sides of what they thought was a square, deemed it unnecessary to meas-

ure the fourth side. Because of this error the westerly boundary as paced out by the parties was 300 feet instead of 208.71 feet.

The description in the deed (which was prepared by a title insurance company.) formed a parallelogram with the south side fronting 208.71 feet on the highway and its east side 208.71 feet parallel to and 40 feet west of the section line. The parcel described in the deed had an area of .91 acres; the parcel paced out by the parties had an area of 1.22 acres.

The Holders abandoned the idea of operating a restaurant on the property and proceeded to build a house and a barn and to dig a well within the paced boundaries.

In 1965 the Holders conveyed the parcel in question to defendants Joe and Dawn Allison. A dispute arose between plaintiff and the Allisons as to the boundary line when plaintiff attempted to fence the east and west boundaries in accordance with the description in the deed. It was then discovered that the well and a part of the barn were outside the parcel as described in the deed. The Allisons removed a part of the fence constructed by plaintiff, whereupon plaintiff brought the present suit.

The trial court found "that by pacing off the boundaries, placing piles of stone and a flag on the various corners thereof, Plaintiff and Defendants laid out on the ground the piece of property that they intended to sell and purchase." The court further found that plaintiff participated in the location of the well and was on the land when the Holders constructed the barn. On the basis of these findings the trial court held that plaintiff was estopped from denying defendants' ownership in the parcel described by the paced boundaries.

■■ It is our opinion upon de novo review of the record that the evidence does not support the trial court's findings. We interpret the evidence to establish that plaintiff and the Holders intended to convey a parcel of land consisting of one acre. It is unreasonable to conclude from the evidence that plaintiff intended or represented to the Holders that they could rely on the paced boundaries as the permanent boundaries of the parcel being conveyed. The parcel was paced out without any devices to measure either the distances or the courses. The parties had only the highway on the south and the fence along the section line on the east as reference points when the parcel was paced out. There were no existing landmarks to delineate the north and west boundaries. The parties did not measure the angle the north boundary formed with the section line nor did they even attempt to check the accuracy of the north boundary by measuring the west boundary which, as we have noted, was 300 feet in length, constituting an error in distance of approximately one-third. One of the boundary points was marked only by making scratches on the ground; another point was marked by tying a white rag on a fence. This is not the kind of identification of boundary lines one would expect to be employed by parties intending that title to one acre only was to pass.

The evidence also shows that a few days after the parties had paced off the boundaries Holder returned to the land with a tape line and measured the distances. He set some of the corner stakes in accordance with these later measurements. This would further indicate that the previous action of the parties in marking out the parcel by pacing was not intended as the establishment of the boundaries of the parcel.

■ Defendants' contention that plaintiff is estopped

from asserting the boundary orally agreed upon by the parties is not supported by the evidence. Plaintiff's participation in the location of the well and his failure to object to the construction of the barn at the place selected by Holder for its location cannot, under the circumstances, constitute the grounds for an estoppel. Plaintiff did not know or have reason to know that the improvements were encroachments upon his land. Plaintiff did not participate in locating the barn. In the absence of some indication that the barn probably was being constructed on his land plaintiff was entitled to assume that the Holders were abiding by the description in their oral agreement.

■ It is our conclusion, then, that the boundaries recited in the decree cannot be sustained either on the theory of an agreed boundary or on the ground of estoppel. Plaintiff urges us to adopt the deed description on the basis that it was ratified by defendants when they used it in the Holder-Allison deed after learning that it may have deviated from their original agreement. However, the defendants' mere use of the erroneous description in the second deed does not justify plaintiff's retention of the benefit of the innocent mistake. That description would embrace only .91 acres and thus would deprive defendants of part of the land for which they had bargained; moreover, it would leave a part of the barn and the well outside the defendants' land. A more equitable solution must be reached.

■ The boundaries ultimately established should embrace, as closely as possible, one acre of land because that was the area which plaintiff agreed to sell and the Holders agreed to buy. It is agreed that the south boundary should abut on the highway and that the east boundary should be parallel to the section line.

With these constants it would appear that the north and west boundaries can be adjusted to embrace the barn and the well and at the same time include in the description one acre of land. The details of this description can be worked out more satisfactorily by the trial court. Therefore the cause is reversed and remanded to enter a decree establishing a boundary for defendants' land consistent with this opinion. The decree should also enjoin defendants from any further unprivileged intrusions upon plaintiff's land. Plaintiff is not entitled to the damages prayed for in his complaint.

Reversed and remanded.