## VINCENT WATSON, Appellant, v. WILLIAM J. SMITH et al., Respondent.

SPECIFIC PERFORMANCE—DEED AND CONSIDERATION OF SUPPORT. — Where a father conveys to his daughter and her husband a tract of land, and in the deed names the consideration as five hundred dollars, where in fact no consideration was paid, but the real consideration was an agreement that his daughter and her husband should live with the father on the land, and support him and his wife in comfort during their lives. A court of equity will compel the performance of such agreement to support the father and mother, and charge the same on the land so granted.

DECREE SET ASIDE, WHEN—MENTAL WEAKNESS.—Where a decree has been

entered, by consent, against one who did not on account of weakness of mind from old age, understand its effect, a court of equity will open it to protect the rights of such aged person.

APPEAL from Linn County. The facts are stated in the opinion.

*F. A. Chenoweth,* for appellant.

*Strathan & Burnett and L. Flinn,* for respondents.

By the Court, BOISE, J.:

The principal facts in this case are: That in 1863 Vincent Watson, the plaintiff, and his wife, made a deed to William J. Smith, and his wife, Minerva J. Smith, and their children, to two hundred and sixty-one acres of land, situate in Linn county. The nominal consideration of this deed is four hundred dollars. But the real consideration was that said Minerva was the daughter of the plaintiff, and he and his wife desired that she and her husband should live with and take care of and provide for them in their old age. And the evidence clearly shows that such was the understanding and agreement of the parties at the time the deed was executed. Vincent Watson and his wife, and Smith and his wife, continued to live together for a time after the deed was made, but not to exceed one year, when some questions arose about the validity of this deed, and the parties to it believed it not to be operative to convey the land to the grantees, and Vincent Watson and William J. Smith went to the record of deeds, where this deed was recorded, and tried to cancel the same by causing to be written on the record the following words:

"STATE OF OREGON, County of Linn, December 17, 1863.

"This deed is stricken from the record, being incorrect. This is done by consent of and at the request of the parties herein.

his<br>
"VINCENT ✕ WATSON,<br>
mark<br>
"WILLIAM J. SMITH,<br>
"MINERVA J. SMITH."

Minerva J. Smith swears that she did not write her name to these words or cause it to be done, and there is a conflict in the evidence on this point. The evidence tends to show that the reason for putting this on the record was that the deed was thought to be inoperative from informality in its execution. Soon after this, Smith and wife moved away from the place, and remained away until about 1875. We think the weight of the testimony shows that during this time, or up to a short time before 1875, Smith and wife supposed this deed was void, and gave them no title. Vincent Watson continued to occupy the place during all this time, and did not request or manifest any desire to have Smith and wife return to live with him, and his expressions would indicate that he was satisfied to have them stay away. He treated the land as his, and supposed it was; and deeded it to his son, who has since died, and who left a will devising this land to his relatives. It seems from the testimony, that Smith, about 1875, became advised that this deed was a good one, and that the attempted cancellation by Watson and himself did not affect or defeat its operation; and he began to claim the land and brought a suit in the circuit court of Linn county to quiet his title, praying therein to have this deed declared operative and to set aside the subsequent deed which had been made by Vincent Watson to his son, Vincent M. Watson, now deceased.

About the same time, Vincent Watson brought a suit against W. J. Smith and wife, Perry Watson *et al.*, in the same court, to set aside this deed and for other purposes, for the reason that the consideration was his and his wife's support during life; that such contract, which was the consideration, had not been kept or performed by the grantees; and that the contract of support and the deed had been canceled by the parties thereto; and alleging that Smith and wife had left the place and refused to support and care for Vincent and his wife.

These suits were at issue and were compromised in June, 1876. A decree was entered in the suit by *Smith* v. *Watson,* declaring that Smith and wife were the owners in fee of this

land by virtue of the said deed, and foreclosing all rights of Vincent Watson in the land.

In the case of *Watson* v. *Smith and wife* a decree was entered dismissing the suit and reciting that the same was settled by the parties thereto. The stipulation on which these suits were compromised is on file, and provides that in consideration of the settlement of the suits and an agreement that Smith and his wife have a decree against Watson to quiet their title, said W. J. Smith and Perry Watson will furnish Vincent Watson and Mary Watson, his wife, all the necessaries and comforts of life, according to their station, so long as they or either of them shall live. And said W. J. Smith agrees that Vincent Watson and wife may remain in possession of the residence on the place in question and one half acre of ground and the garden connected therewith, and that when they shall die, will give to them a decent and respectable burial.

This stipulation or agreement then proceeds as follows: "And in the further consideration of the premises this provision is expressly made and agreed upon, 'that in the event that Wallace Cushman, the bondsman of said Vincent Watson, for the payment of costs and disbursements of this suit, has the costs and disbursements to pay, then, and in that case, said Smith and Perry Watson agree to repay the same to Cushman; which costs and disbursements are to be deducted out of the funds that would otherwise be applied for the necessaries and comforts of life for said Vincent and Mary Watson.'"

These suits were all settled at the cost of Vincent Watson, and decrees rendered for the same in each case. But the amount of these costs is not stated. So it seems that in case these decrees for costs were of a considerable amount, there would be no adequate provision for the support of Vincent Watson and wife. The stipulation and settlement seems to be very barren of any future prospects for good in their behalf. The evidence shows that nothing has been furnished them under it, and that they are now left in extreme old age to the charity of their neighbors.

This unfortunate matter seems to have been a fruitful

cause of litigation, as three suits growing out of it have been compromised, and the one now before us is the fourth. In those that have been compromised the merits of the controversy were not before the court or passed on and determined by it; so this is the only suit in which the case has been presented on its merits. We, therefore, feel less reluctance in opening the decrees than we would had the facts been fully considered in any of the former cases. We will now proceed to consider what passed by this deed, and the effect of the conduct of the parties thereto.

The deed, being good in form, conveyed the land by its terms to W. J. Smith, his wife and children, and being invested with the title, they could only be deprived of it by their deed or by the decree of a competent court. The writing on the record did not revert the title in Vincent Watson or in any way affect it, and is in no way important, except as evidence tending to show the understanding of the parties as to the consideration or agreement by Smith and wife to maintain Vincent Watson and wife.

Under this deed Smith and wife could have maintained ejectment for the land against Vincent Watson, and Watson would have had no defense at law. Smith had no occasion to go into a court of equity to quiet his title, which was perfect under his deed, and the decree rendered by the court, in the case of *Smith and wife* v. *Watson,* declaring that they are owners under this deed, has added nothing to their title, unless it be that part thereof which forever bars Vincent Watson from setting up any claim to this land, and with this exception the parties stood in the same relation to the land before as after the decrees.

We think that, considering the extreme old age of the plaintiff and his acknowledged weakness of mind when he assented to these decrees, which, we are satisfied from the weight of the evidence, he did consent to without understanding their purport or effect; it is the duty of the court to examine into the equities which plaintiff has alleged as a reason for setting aside or modifying this deed.

As we have before said, the consideration of this deed was the agreement on the part of Smith and wife to pro-

vide for and support the grantors.  The misunderstanding
that arose as to the validity of the deed and the rights of
the parties under it which arose soon after it was executed,
caused the parties to separate and 'left Vincent Watson in
the possession of the premises, from which he was enabled
to make a support for himself until he was deprived of the
possession under the decree referred to.  The parties lived
separately by mutual consent, so far as the evidence shows;
Watson enjoying the land, being content to look to it, and
not to Smith, for a support.  Nor does he seem to have
deserved any aid from Smith.  There was no refusal by
Smith and wife to support Watson and wife, nor anything
done which would properly be a willful violation of their
contract, and which would warrant the court in declaring a
cancellation of the deed.  But we think that by the under-
standing of the parties, Vincent Watson was to be sup-
ported as a consideration for this conveyance, and that
Smith and wife can not hold the land. discharged of this
trust or charge.  Heretofore, and until after the decree in
the suit that was compromised, they contributed nothing to
his support, nor have they since.  Prior to that time the
land supported them; and as for the future, the evidence
would indicate that unless this land is charged with their
support, they will be left destitute.  We think, therefore,
that Vincent Watson and wife should have the possession
and enjoy the rents and profits of this land as long as
either of them shall live.  (*Yoakum* v. *Yoakum*, 78 Ill. 85.)
And that the decrees of the court referred to in this suit
should be so modified and set aside as not to in any man-
ner interfere with or impair such life estate of Vincent and
Mary Watson in the said premises.  We think that nothing
less than this would be just under the evidence in this case.
Mr. Watson was the possessor of a large estate, which he
has bestowed on his children, having given to his said
daughter Minerva one hundred and six acres, besides the
land in question, which land he seems to have reserved for
support in old age; and as he earned it by his labor and
economy, he ought not now to be deprived of it and cast
on charity for support.

As to the case of R. S. Strahan, whose mortgage covers this land as well as the one hundred and six acres deeded to Minerva J., the evidence shows that he has been conversant with all these legal proceedings, and had full notice of all the equities of Mr. Watson in the premises.

The decree in his case will therefore be so modified that it shall be a lien only on the estate of Minerva J. and W. J. Smith in the land in controversy, and any sale under said decree in favor of said Strahan shall only transfer the title to said premises subject to the said life-estate of said Vincent and Minerva Watson.