Submitted on briefs June 14, decided July 19, rehearing denied
Oct. 25, 1910.

# LANGLEY v. KESLER.

[110 Pac. 401; 111 Pac. 246.]

Names—Idem Sonans.

1. Where land was conveyed by deed to a grantee, whose name was
spelled "David Kessler," and there was no dispute as to the identity of the
grantee whose name in fact was "David Kesler," the names were *idem
sonans,* and the deed was not affected by the mistake in spelling.

Husband and Wife—Conveyances to—Intent of Parties—Mistake.

2. Where a husband furnished the consideration for a conveyance of
land, intended for himself and wife, as tenants by the entirety, the deed
to the husband alone was not invalidated by omission of the wife's name.

Reformation of Instruments — Mistake — Obligation of Grantor—
Gift.

3. Where a purchaser of land intended to take a deed to himself and
wife, the wife to be a mere gratuitous beneficiary of the purchase, by hav-
ing the title conveyed so as to create an estate by the entirety, but the
husband failed or neglected to carry out such purpose and took title in his
own name, there was no obligation on the grantors to correct the mistake,
and the wife was not invested with an equitable right to enforce a reform-
ation of the deed either as against the grantors or her husband.

Estoppel—Estoppel by Deed.

4. In general, there can be no estoppel by a deed against the grantee in
a deed poll.

Estoppel—Estoppel by Deed—Estoppel of Grantee.

5. The acceptance of a deed poll estops the grantee to dispute the gran-
tor's title for the purpose of escaping entirely the payment of the purchase
price; to question the validity of the grantor's title at the time of convey-
ance in contest with another claiming under a paramount title which he
himself has acquired, or connected himself with; to claim that the convey-
ance he has accepted was in fraud of the grantor's creditors so long as he
claims under that title alone. nor can the grantee, having accepted a deed
with seisin, allege that the grantor's covenants are broken by reason of the
fact that the grantee himself, at the time he accepted the deed, was seised
of the premises; nor can he deny his covenants or that the seal attached is
his, in an action thereon.

Deeds—Recitals—Conclusiveness.

6. Recitals in a deed intended to qualify the formal part thereof, are
conclusive, binding admissions on the grantees, as well as the grantors of
the truth of the facts recited, and whatever rights legitimately arise on
such facts. may be at all times asserted, whether it be to obtain or defend
the same.

Deeds—Correction—Estoppel—Inoperative Deed.

7. A husband purchased certain property intending to take title in the
names of himself and wife, so as to create an estate by the entirety, but,
instead, accepted a deed to himself alone. The wife had contributed no

part to the purchase price, and thereafter a new deed was executed by the grantors to the husband and wife, which recited that it was to correct the former deed in which, through inadvertence, the name of the wife as one of the grantees had been omitted, and the surname of the grantee had been misspelled. *Held,* that the recitals in the second deed controlled its formal parts and covenants, and showed that at the time it was executed the grantors had no title which could be conveyed, and hence persons holding under the husband's will were not estopped, by the second deed, to deny the right of those holding under the wife to claim that she held title as the survivor of an estate by the entirety.

REFORMATION OF INSTRUMENTS—MISTAKE—RIGHT TO RELIEF—GIFTS.

8. Where a vendee intended to take a conveyance to himself and wife, but failed to carry out such purpose and took title in his own name, the wife was the intended object of a mere bounty, and equity will not reform the deed, either at the instance of the grantee or the wife.

From Washington: JAMES A. EAKIN, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit by A. J. Langley against Abraham L. Kesler, Mary J. Kesler, John Kesler, Elizabeth Kesler, Charles Kesler and Anna Kesler, to quiet title to a parcel of land approximately 50 by 100 feet, being a part of lot 3, block 27, in the city of Forest Grove of this State. All the facts have been agreed upon, either by admissions in the pleadings or by stipulation. It is alleged by the answer, and admitted by the reply, that on April 4, 1904, J. C. Woods and Charlotte L. Woods, husband and wife, were seised of the fee, and it is from them that both plaintiff and defendants deraign title, but through different instruments. The facts, as set forth in the answer, are that on April 4, 1904, Woods and wife executed a warranty deed, conveying the premises to David Kesler for the consideration of $250 paid by Kesler; that at that time Ellen J. Kesler was the wife of the grantee, each having children by a former marriage; that defendants Abraham L. Kesler, John Kesler, and Charles Kesler are the sons, and Anna Kesler is the daughter of David Kesler. Defendants Mary and Elizabeth Kesler, we presume, are the respective wives of Abraham and John Kesler, although there is no averment of such identification; that Charles W.

Nice and Nora Wilhelmson are, respectively, son and daughter of Ellen J. Kesler; that on October 20, 1908, David Kesler died, seised of the lot in question, and leaving a will, by which he devised a life estate therein to his wife, Ellen J. Kesler, and the remainder in fee in equal shares to his and his wife's children. This will was executed by him on November 20, 1907, and on October 27, 1908, on petition of the widow, was admitted to probate. Under and by virtue of said will each of the four children of David Kesler claim to own in fee an undivided one-sixth interest in the premises.

Plaintiff, by his reply, admits the execution of the deed to David Kesler, but denies that the fee was thereby conveyed to him as the sole grantee, and he also admits the execution and probate of the will, but denies that at his death David Kesler was the owner in fee of the land. As an affirmative reply it is averred that on May 18, 1904, at the request of David Kesler, J. C. and Charlotte Woods made, executed, and delivered to David and Ellen J. Kesler a warranty deed to the same premises, which they placed on record in June following. The instrument contained the following recital:

"This deed is made for the purpose of correcting a former deed, dated April 4, 1904, in which, through inadvertence, the name of Ellen J. Kesler as one of the grantees was omitted, and name 'Kesler' was erroneously spelled 'Kessler.' "

On January 16, 1909, Mrs. Kesler, evidently claiming to be the surviving tenant by the entirety, conveyed the premises to plaintiff's grantors, from whom plaintiff, by proper conveyance, derived his title to the entire lot. The making of the second deed, the acceptance thereof by defendants' testator, and the recital therein, are pleaded as an estoppel by plaintiff against the defendants.

The plaintiff was decreed to be the owner of an undivided one-third interest, and each of the four defendant

children of David Kesler to be the owners of an undivided one-sixth interest. Plaintiff has appealed.

AFFIRMED.

Submitted on briefs without argument under the proviso of Rule 16 of the Supreme Court. 50 Or. 580 (91 Pac. viii.)

For appellant there was a brief over the name of *Messrs. W. M. Langley & Son.*

For respondent there was a brief over the name of *Mr. Henry T. Bagley.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. By the stipulation of facts, upon which the case was tried in the court below, it is admitted that the first deed was made as claimed and alleged by defendants; but it is now argued that because the name of the grantee therein was erroneously spelled "Kessler" instead of "Kesler," and because it is recited in the second deed in effect that it was the intention of the parties that Ellen J. Kesler should have been one of the grantees, that the first deed was not capable in law of transferring the whole title to David Kesler. In fact it is urged upon us that no estate whatever passed to David Kesler by the first deed, because it was the intention of the parties that the title should be transferred to David Kesler and his wife jointly. The slight inaccuracy in the spelling of the surname of the grantee can have no effect upon the efficacy of the deed. The name of the grantee should be sufficient to identify the person intended, though it need not, as a matter of law, be accurate in every respect. 9 Am. & Eng. Enc. Law (2 ed.) 133. Here the identity of the person intended is settled by the stipulation beyond dispute; for it is therein admitted that the deed having the name of the grantee spelled "David Kessler" was delivered by the persons executing it to David Kesler, whose identity is not

in question. In any event the two names are *idem sonans,* and therefore they are the same in law. 21 Am. & Eng. Enc. Law (2 ed.) 313.

2. As to the intent of the parties, and the alleged mistake made, by not including in the first deed the name of Ellen J. Kesler, the wife, as one of the grantees, even if true, that fact does not prevent the deed from being operative to convey the title to David Kesler, named therein, for it is admitted that the contract of purchase was made and the consideration paid by David Kesler; hence there were sufficient parties to make a binding contract, and capable of receiving the title. The mistake was not as to the party with whom the contract was made, but as to a third party not directly concerned with the making of the contract, but who was to be a beneficiary thereof, as a matter of gratuity on the part of the real purchaser. The authority cited and relied upon by plaintiff have to do with the question of determining whether under a particular state of facts a deed in form was, in fact, intended by the parties to be a mortgage to secure a debt, and in such case it is the established rule that the intent of the parties must prevail. But that question has no bearing upon the present case.

3. If it was the intent of David Kesler that his wife, Ellen J. Kesler, was to be made a beneficiary of the purchase, by having the title conveyed to them jointly as husband and wife, thereby creating in them an estate by the entirety, but he failed or neglected to carry out that purpose in receiving the title, there was no obligation on the part of the grantor to correct the mistake, nor anything to prevent the husband from afterwards carrying out his intent, if he so desired, by reconveying to the grantor or to some third person, and taking back the title in the form intended, nor would such facts invest Mrs. Kesler with any equitable right to enforce against either the grantors or her husband, or both of them, a reforma-

tion of the deed. But the first deed, being good in form, and having been delivered to him, he was invested with the complete title, and he could not be divested of it, except by his deed properly executed and delivered. *Watson* v. *Smith,* 7 Or. 448, 452.

4. The only question remaining to be considered is whether the defendants, being in privity with David Kesler, are estopped from asserting that he acquired the sole title under the first deed. The estoppel attempted to be raised is based solely upon the acceptance by David Kesler jointly with his wife of the second deed executed on May 18, 1904, by Charlotte L. Woods and J. C. Woods, thereby recognizing and acknowledging, it is asserted, that said grantors had title at that time. That is, an estoppel by deed is set up, and not an estoppel *in pais,* for it is not alleged that Ellen J. Kesler, through whom plaintiff claims, relied upon any declaration or admission, expressed or implied, made by David Kesler that he was not the possessor of the title under the first deed, and changed her position to her injury. The general rule is that there can be no estoppel by deed against the grantee in a deed poll, because he does not join in the execution of it, and the doctrine that parties to a sealed instrument cannot dispute its force or effect, when applied to such an instrument, is limited in its effect to an estoppel against the grantor, and does not reach the grantee. Bigelow, Estoppel (5 ed.) 356; 11 Am. & Eng. Enc. Law (2 ed.)· 399; *Robertson* v. *Pickerell,* 109 U. S. 608, 614 (3 Sup. Ct. 407: 27 L. Ed. 1049).

5. There are certain exceptions to the general rule above announced, noted and commented on by Mr. Bigelow, such as that the acceptance of that deed poll sometimes works an estoppel upon the grantee, in the case of admissions and covenants intended for him; that a grantee, holding under his grantor, cannot dispute his grantor's title for the purpose of escaping entirely the

payment of the purchase price of the property; that a grantee cannot question the validity of his grantor's title at the time of his conveyance in contest with another, who claims under a paramount title which he himself has acquired, or connected himself with; that he cannot assert the existence of such paramount title, or allege any defect in his grantor's title, nor can he say that the conveyance he has accepted was made in fraud of his grantor's creditors, so long as he claims under that title alone. Nor will a person be permitted to accept a deed with seisin, and then turn around upon his grantor and allege that his covenants are broken by reason of the fact that he himself at the time he accepted the deed was seised of the premises; nor will the grantee in a deed poll, having accepted the deed and estate, be permitted to deny his covenants, or that the seal attached is his in an action on the covenants. Bigelow, Estoppel (5 ed.) 356 and 357.

6. It has been stipulated that the second deed was delivered to David Kesler and Ellen J. Kesler, and this imports an acceptance by the former of title thereunder; and, if there were nothing further shown, it would perhaps be sufficient to estop him and those in privity with him, from denying that the grantors named therein had title at that time. But it is admitted that subsequently David Kesler, by executing his will, devised the whole title, thereby asserting title under the first deed, and these defendants now claim title not under the second deed, but under the first one. This would appear to reduce the question to one of priority merely, necessarily destroying the effect of the second deed. But we are somewhat in doubt as to the soundness of this solution of the matter, and prefer to place the decision upon another ground, which brings the same result. Assuming, if nothing further were shown, that the facts so far considered would be sufficient to raise an estoppel against the defendants from asserting title under the first deed, still the

effect of the recital in the second deed must be taken into consideration. The matters there stated are explanatory of the reasons for making the deed, are particular in form and intended to qualify the formal part of the deed. Such recitals are conclusive by way of estoppel upon the parties to the deed. They are binding admissions upon both grantees of the truth of the facts recited, and whatever rights legitimately arise on such admitted facts may at all times be asserted, whether it be to obtain or defend such rights. *Pinckard* v. *Milmine,* 76 Ill. 453; *Orthwein* v. *Thomas,* 127 Ill. 554 (21 N. E. 430: 4 L. R. A. 434: 11 Am. St. Rep. 159.)

7. It is not the legal conclusion stated or drawn by the parties, that is to govern, but the facts and conclusions that the law would draw therefrom and enforce. *Orthwein* v. *Thomas,* 127 Ill. 554 (21 N. E. 430: 4 L. R. A. 434: 11 Am. St. Rep. 159.) This brings us to the application of another qualification of the principle of estoppel by deed; that is, "if the truth plainly appears on the face of the deed, there is, generally speaking, no estoppel. And this simply means that all parts of the deed are to be construed together; and that if an allegation in the deed, which alone would work an estoppel upon the parties is explained in another part of the deed, or perhaps in another deed, to which reference is made for the purpose, there is ordinarily no estoppel." Bigelow, Estoppel (5 ed.) 361, 362. In *Pelletreau* v. *Jackson,* 11 Wend. (N. Y.) 110, 117, cited by the learned author, in support of the above-quoted principle, it is said that "the plain reason on which his branch of the law seems to rest is that every man is bound to speak and act according to the truth and fact of the case, and the law will therefore not only presume that he has done so, but will deny him the right to contradict such reasonable presumption—*nemo allegans contraria est audiendus.*" And further commenting thereon it is said that "no one should be denied setting up the truth,

unless it is in plain and clear contradiction to his former allegations and acts."

Now, the recital in the second deed is that it was made for the purpose of correcting a former deed, dated April 4, 1904, in which, through inadvertence, the name of Ellen J. Kesler, as one of the grantees, was omitted, and the name Kesler erroneously spelled "Kessler." It is stipulated that the deed referred to was by the same grantors, for the same land, and was to David Kesler, for a consideration of $250, paid by him. Although it is covenanted in the second deed that the grantors are seized in fee simple, and the deed purports to convey such estate to the grantees, yet from the facts stated therein it must be plain that such was not the fact, and that the parties are bound to have so understood. The facts are put before them and recorded in the instrument, and it is now claimed that David Kesler and his devisees should be estopped from alleging and proving these very facts. The rule is to the contrary; they are estopped from denying them: *Holmes* v. *Ferguson,* 1 Or. 220.

The only question, then, to be considered is the legal effect of these admitted facts. Are they sufficient to constitute an estoppel *in pais?* We have said that when the truth of the matter appears upon the face of the deed, there can be no false impression; no misleading to the injury of another. The same principle was stated in a modified form in *Hannon* v. *Christopher,* 34 N. J. Eq. 459, 466, in this manner:

"Whether the appearance of the truth on the face of the instrument will defeat an estoppel or not, must altogether depend upon the fact whether it is so expressed that it can be readily seen and understood by the person who ought to be influenced by it, or in manner so technical or obscure that, although it must be admitted it appears in the instrument, yet it is certain it was not seen nor understood by the person who should have been influenced

Sig. 10

by it, but that he dealt with the party sought to be estopped as though the words on which the estoppel is founded expressed the whole truth."

This cause involved the claim of an estoppel against a grantor, and those claiming under him, from asserting against his grantee, and those claiming under her, an after-acquired title. The facts were that the testator of both parties to the deed devised the property in question to them and a third person jointly in these words:

"I give and devise all my real estate, whatsoever and wheresoever, unto my niece, Mary N. Jarvis, my mother, Sarah Vermilya, and my brother, Thomas Vermilya, to the survivor of them, and to the heirs and assigns of such survivor."

This devise, it was held, created a joint estate for life, with a contingent remainder in fee to the survivor. Sarah died first; thereafter Thomas conveyed all his right, title, and interest therein to Mary N. Jarvis, reciting in deed the words of the devise, that Sarah Vermilya had died, and that in consequence thereof the fee-simple title had vested in Thomas and Mary, and that he, being desirous of vesting the whole estate in Mary, therefore made the conveyance, but the deed was without covenants of title or warranty. Mary died first, then Thomas and his heirs were seeking to recover the land from her successors in interest, but were enjoined by an equity court from prosecuting their action. Upon motion to dissolve the injunction it was first held that the grantor had intended, as manifested by the recitals in the deed, to grant an estate in fee, and that the grantee, expecting to get such a title, had paid a consideration amounting to $100. The rule announced in *Van Rensselaer* v. *Kearney*, 11 How. 297, 301 (13 L. Ed. 703), was followed and applied, which is to the effect that whatever may be the form and nature of the conveyance to pass real property, if the grantor sets forth on the face of the instrument, by way of recital

or averment, that he is seised and possessed of a particular estate in the premises, which estate he purports to convey, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seised at the time he made the conveyance. The reason therefore was said to be that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the estoppel existed; and so this court, following the same case, announced the same doctrine: *Taggart* v. *Risley,* 4 Or. 235; *Bayley* v. *McCoy,* 8 Or. 259; *Salem Improvement Co.* v. *McCourt,* 26 Or. 93 (41 Pac. 1105).

The second point considered and decided by the court in *Hannon* v. *Christopher,* 34 N. J. Eq. 459, 466, was the effect of another recital in the deed, flatly contradicting the affirmation of the title. The grantor said in his deed that he and his grantee held the lands in fee, but in stating the facts from which that conclusion was deduced he showed, at least to the professional mind, that his deduction was entirely unwarranted. After discussing the legal principle to be applied and the authorities bearing on the subject, the rule first above stated was declared by the court to be the law. Applying the law thus announced to the facts of that case, it was held that, notwithstanding the apparent contradiction of the recitals, the estoppel existed, but in that connection it was said that "the great purpose, lying at the foundation of the law of estoppel, is to prevent fraud, either actual or legal. Estoppels are to be used as shields, not as swords." The legal fraud in that case consisted in the grantee, while contracting to purchase a fee-simple title, relying upon the recitals in the deed, and being misled to her injury. It was said that they were dealing with the fee. Thomas intended to grant to Mary Ann the fee simple absolute, and she expected to get it. That

was the estate for which she paid her money, and that was the estate Thomas intended to convey to her. Now, it is not the intent alone of the parties that created the equity in Mary Ann Jarvis, but she was contracting to purchase a fee, and, relying upon the recitals in the deed, affirming that the grantor had such an estate, she was misled to her injury. She paid $100 for the title, and the injury grows out of such payment. As before stated that case was an estoppel raised against the grantor, preventing him from asserting an after-acquired title, falling upon him when Mary Ann Jarvis died. In this case the estoppel is not sought against a grantor in favor of a grantee to prevent the assertion of an after-acquired title, but it is attempted to be raised by one grantee against her joint grantee to prevent him from asserting a title already vested in him, so the facts of the two cases are not analogous; but we are looking at the principles of law announced in that case, which create an equitable estoppel. In this case Ellen J. Kesler, through whom plaintiff claims, did not contract with any one for the title. The second deed in which she was named as a grantee was made, according to the stipulated facts, at the request of David Kesler. It recites the making of the previous deed, and it is stipulated that David Kesler paid the purchase price when the first deed was made. She paid nothing whatever, but stands as the recipient of an attempted gratuity from her husband, who, when the first deed was made, paid the full purchase price for the lot in question, and by virtue of a deed then made, received the legal title. She had no part in making the purchase, but he, wishing that she should share in the benefits of the purchase, attempted to invest her with a joint estate, by requesting his grantor to execute the second deed, and because the grantor had then no estate to convey, she was simply disappointed in not receiving a legal title; but that did not constitute an injury to any vested legal or

equitable right she possessed. Unless as a matter of law the legal title became vested in her, it being a gift, she cannot complain if, through some mistake in making the conveyance, she did not receive such a title. The facts stipulated, and on which this decision is based, are substantially a matter of record in the two deeds; hence those succeeding her in the chain of title took with notice of such facts, and they are not in position to claim any rights superior to those which she could claim.

We are satisfied that the decree of the lower court is equitable and just, and therefore it is affirmed.

AFFIRMED.

Decided October 25, 1910.

ON PETITION FOR REHEARING.

[111 Pac. 246.]

MR. JUSTICE SLATER delivered the opinion of the court.

8. Plaintiff concedes by his motion for a rehearing that the conclusion reached, as to the alleged estoppel, is correct, but still insists that upon the facts shown a court of equity would have reformed the first deed to conform to the intent of the parties as recited in the second deed, and that that which equity would have decreed may be done by the parties themselves and the same effect will be given the result. We do not now controvert the latter contention, for it is not necessary to a decision of the case. But we have said that a court of equity would not have reformed the first deed upon the petition either of Kesler, the grantee, or of Mrs. Kesler, who it is said was an intended grantee. The latter was the intended object of a mere bounty. "If there is a mistake or a defect," say the court in *Adair* v. *McDonald*, 42 Ga. 506, "it is a mere failure in a bounty, which, as the grantor was not bound to make, he is not bound to perfect." This

was held by this court in *Clark* v. *Hindman*, 46 Or. 67 (79 Pac. 56). In *Bohanan* v. *Bohanan*, 3 Ill. App. 502, a case somewhat similar to the present one was presented. B., to induce his son to abandon a contemplated removal to Nebraska, told him, if he would not go, he would purchase for him a 40-acre tract, which he accordingly did. The son made improvements upon the house and farm and put in crops, but did not move upon the premises. By mistake B. was named as grantee in the deed instead of his son, who died shortly afterwards. On a bill filed by the heirs of the son to correct the mistake, relief was granted. The court puts the decision upon the injury suffered by the son, who had taken possession and made improvements. He had also been offered $1,000 by his wife's father to start in business if he should remove to Nebraska. "It is true," say the court, "that the land was a gift from the father to the son, but the son having given up going west and taking with him the one thousand dollars from his wife's father, and also having taken possession of the given land and expended money in improvements thereon as his own," it was a case within the province of equity to grant relief. See, also, *Haack* v. *Weicken*, 118 N. Y. 67 (23 N. E. 133). Neither would equity have reformed the deed on the petition of Kesler, for he was not injured. He had received the title to the whole estate and was in a position to invest Mrs. Kesler with whatever interest in the premises he might wish to bestow. *"Equitas non supplet ea quae in manu or antis esse possunt."* "Equity does not supply those things which may be in the power or reach of an applicant." Lofft's Rep. Max. 391.

The motion is therefore denied.

AFFIRMED: REHEARING DENIED.