Argued January 14, affirmed and remanded for supplemental proceedings March 9, rehearing denied May 18, 1920.

## MURPHY *v.* WHETSTONE.
(188 Pac. 191.)

**Vendor and Purchaser—No Vendor's Lien on Conveyance in Consideration of Future Support of a Third Person.**

1. Where a conveyance of land is made in consideration of future support of a third person, no vendor's lien arises.

Liens—Equity will Create Lien on Property to Carry Out Agreement to Support Third Person.

2. Where a conveyance of property is made in consideration of the future support of a third person, upon a breach of the conditions by the grantee, equity will then create a lien or charge on the property to carry out the spirit and intent with which the conveyance was made.

Guardian and Ward—Guardian Entitled in Equity to Recover Amount Expended in Support of Incompetent from Grantee of Land Agreeing to Support the Incompetent for Life.

3. Where a mother conveyed land to certain children in consideration of their promise to support after her death an incompetent child, and during her life the mother releases them from the promise, and after her death a guardian appointed for the incompetent person in good faith brings an action to set aside the release, and in such proceeding learns for the first time that the grantees had orally agreed at the time of the release to support the incompetent, defendants affirmatively alleging such oral contract and their readiness to comply therewith, the guardian should receive a reasonable compensation for support of the incompetent while under his care, and until the grantees again assume his care and support.

From Jackson: FRANK M. CALKINS, Judge.

Department 2.

David and Almira Whetstone, husband and wife, were pioneers of Rogue River Valley, where they reared a large family. The defendant H. F. Whetstone is one of their sons, and Della M. Whetstone is his wife. Another son is W. M. Whetstone, who is feeble-minded and more or less a cripple. David Whetstone died prior to November 4, 1898, leaving his widow, Almira, the sons H. F. and W. M. Whetstone and other children surviving him.

The joint property of the parents consisted of money and mortgages and some acreage of good land in Jackson County. The realty over which this litigation arose lies between Medford and Jacksonville. It is valuable, productive land. At the time of David Whetstone's death all of the property had been conveyed to Almira Whetstone except that portion which had been divided among their children. On November 4, 1898, all of the children except

W. M. Whetstone had received from their parents, by gift or purchase, conveyances of different tracts of land. As a rule, in such conveyances a life estate was reserved to the parents, who were thrifty and close in their dealings.

W. M. Whetstone could not transact any business or provide for himself and could do but very little manual labor. On November 4, 1898, Almira Whetstone executed to the defendants Whetstone her deed for the lands described in the complaint, known as the 55-acre tract, reserving a life estate therein. At that time the following instrument was executed:

"This article of agreement, made and entered into this fourth day of November, A. D. 1898, by and between Henry Francis Whetstone and Della M. Whetstone, husband and wife, of the county of Jackson and state of Oregon, and Almira Whetstone, of the same place, witnesseth:

"That whereas William M. Whetstone, the son of said Almira Whetstone and the brother of Henry Francis Whetstone, is dumb and crippled, and by reason thereof unable to do manual labor or transact business of any kind whereby to make his living, and is therefore unable to maintain and support himself;

"And whereas the said Almira Whetstone desires to make provision for the proper care, maintenance, and support of the said William M. Whetstone during his natural life, from her property in case of her death, and for said purpose has on the date hereof conveyed to the said Henry Francis Whetstone and Della M. Whetstone the following described real estate, to wit: * *

Now, therefore, in consideration of the premises and of said conveyance of said real estate to us by the said Almira Whetstone as aforesaid, we the said Henry Francis Whetstone and Della M. Whetstone, do hereby covenant, promise, and agree to and with the said Almira Whetstone, her heirs and devisees, that from and after the date of her death, during

the remainder of the natural life of the said William
M. Whetstone, we will, at our own cost and expense,
well and suitably maintain, support, and provide for
the said William M. Whetstone, and will supply him
a home with us in our family and treat him in every
manner and respect as a member of our family, and
supply him with all the necessaries and comforts of
life, including food, clothing, medicine, medical at-
tendance and nursing when sick, and other neces-
saries and comforts of life of equally as good qual-
ity and character as we shall supply or furnish for
ourselves or any other member or members of our
family, and will in every way and manner treat and
care for him and for his comforts as faithfully and
well as we do for any member of our own family so
long, however, as he shall remain in his right mind
and shall submit to our reasonable control and man-
agement, but nothing in this contract shall be so con-
strued as to require us or either of us to maintain,
support, or care for said William M. Whetstone in
case from his insanity (should he become insane or
unmanageable) or other cause it shall become neces-
sary to send him to an asylum or shall be impossible
for us to manage, control, and keep him at and in
our home as a member of our family as aforesaid
and in reasonable manner in which we have herein-
above agreed to care for, support, and maintain him
during the said remaining period of his life.

"In testimony whereof we have hereunto sub-
scribed our names and affixed our seals this fourth
day of November, A. D. 1898.

"HENRY F. WHETSTONE.    [Wafer]
"DELLA M. WHETSTONE.    [Wafer.]"

This was recorded on October 22, 1904, in the
records of deeds of Jackson County.

On September 1, 1909, the defendants Whetstone
sold and conveyed the 55-acre tract to a man named
Parker for $10,700 cash, all of which, under the in-
structions of Almira Whetstone, was then paid to
H. F. Whetstone. At the instance of the purchaser,

to insure him a good title, the following written instrument was executed and acknowledged by Almira Whetstone:

"Whereas on the fourth day of November, A. D. 1898, the undersigned Almira Whetstone entered into an agreement in writing with Henry Francis Whetstone and Della M. Whetstone by which she conveyed to them certain lands and tenements in Jackson County, Oregon, which are more fully and accurately described in the deed therefor, made by me to them, and which deed bears the date the 4th day of November, A. D. 1898, and is recorded in Vol. 36 of the Deed Records of Jackson County, Oregon, on page 31 thereof, to which deed reference is made for a more particular description of the lands affected by this agreement, and in said deed I reserved to myself the absolute use and possession of said premises during the period of my natural life, and on the same date and at the same time above mentioned the said Henry Francis Whetstone and Della M. Whetstone by their agreement in writing entered into an obligation to me, whereby, in consideration of my making and conveying to them the premises above referred to and described, they obligated themselves to make provision for the proper care, maintenance, and support of William M. Whetstone, the dumb and crippled brother of said Henry Francis Whetstone, and supply him with a home after my decease and during the balance of his natural life; and whereas, it is the desire of myself and the said Henry Francis Whetstone and Della M. Whetstone that said contract be and the same hereby is abrogated; and whereas, myself and all other parties to said deed and contract desire to sell said lands described in said deed and contract free from all obligation and liability of any and every kind and character whatsoever.

"Therefore, in consideration of five dollars to me in hand paid and other good and valuable considerations to me paid, I hereby release and discharge said Henry Francis Whetstone and Della M. Whet-

stone from all liability under said contract, * * and I do also release the lands described in the deed above referred to from any lien, claim, or demand whatsoever for the care, support, and maintenance of the said William M. Whetstone, and from any and all claims and demands of any kind and character whatsoever.''

About October 1, 1915, upon a duly verified petition and by an order of the County Court for Jackson County, the plaintiff L. A. Murphy was regularly appointed guardian of the person and estate of W. M. Whetstone, qualified then, and has at all times since been such guardian. In the proceedings therefor citation was duly executed to the defendants Whetstone to appear and show cause why the plaintiff should not be appointed as such guardian. They appeared, and, setting up the contract of November 4, 1898, the petitioner then pleaded the subsequent agreement of September 1, 1909, as a release from that contract. The defendants then withdrew their appearance in the County Court proceedings and refused to plead further. That court thereupon made an order by which the plaintiff was appointed such guardian.

On another petition in the same court the defendant H. N. Lofland was duly appointed and qualified as administrator of the estate of Almira Whetstone, then deceased. After the death of her husband she and the son W. M. Whetstone lived with the defendants Whetstone, and the feeble-minded son continued to live with them after the death of his mother until the plaintiff was appointed his guardian, when he was taken away, and ever since has resided with his guardian, who is the husband of Alice Whetstone, a sister of H. F. and Della M. Whetstone.

The complaint is founded upon the theory that on September 1, 1909, when the lands were conveyed to Parker, Almira Whetstone was aged and mentally infirm; that she was unduly influenced by the defendants Whetstone; that there was no consideration for such conveyance; that the deed to the defendants Whetstone was executed and delivered in trust and as a guaranty for the support of the said W. M. Whetstone for the period of his lifetime after her death; that she was wrongfully induced to join in the execution of the deed to Parker and to relieve the defendants of their contract to care for and support W. M. Whetstone, which was the only consideration for her conveyance to them; and that the defendants took and appropriated to themselves the $10,700, for which they have never accounted and refuse to account to anyone. The plaintiff as guardian prays for a judgment against the defendants Whetstone for $10,700, less a 5 per cent commission on the sale, and interest, and that a lien for the payment thereof be impressed against the property which was purchased by the defendants Whetstone with the proceeds of the sale of the 55-acre tract, as such acquired lands are described in the complaint.

The defendants Whetstone admit the appointment of L. A. Murphy as guardian of W. M. Whetstone as alleged, his qualification, the execution of the deed and contract of November 4, 1898, and the subsequent agreement of September 1, 1909. They affirmatively allege that, notwithstanding the execution of the latter instrument, it was agreed that they should "be and remain fully bound to do and perform all the covenants and agreements of said Exhibit A, the same as though the agreement Exhibit B had never been entered into, and that the sole

effect of said Exhibit B should be to render the title to said premises acceptable to said Parker." Those defendants further plead that since the execution of the deed of November 4, 1898, "subject only to the right of possession therein reserved by said Almira Whetstone," they were the exclusive owners of the 55-acre tract and all of the proceeds from the sale thereof, and that the conveyance to them was absolute, founded upon their contract, which they had kept and performed and were ready and willing to fulfill.

As a reply the plaintiff alleges that "any such pretended contract has been by said Henry Francis Whetstone and Della M. Whetstone totally, wholly, and entirely violated"; that ever since the death of Almira Whetstone said defendants "have each failed, refused, and neglected" to supply said William M. Whetstone with a home with them and their family and to treat him as a member of their family, have failed and neglected to supply him with the necessaries and comforts of life suitable to his station, * * and have violated all of the terms and conditions of the contract by which the conveyance of the 55-acre tract was made.

The Circuit Court found that at the time of the conveyance the land was worth from $1,800 to $2,200; that in the year 1909 there was a material increase in its value, and that it was then sold to Parker for $10,700; that, notwithstanding the conveyance to Parker and the release then executed, it was never intended that the defendants Whetstone should be relieved from their contract to maintain and support W. M. Whetstone; that the full purchase price of the land was paid to the defendant H. F. Whetstone under the instructions of Almira Whetstone; that

the latter acted "upon her own volition and was competent at said time to transact her business"; that after her death in 1913 the defendants "carried out the terms and conditions of their contract to support and care for the said William M. Whetstone until in September, 1915, at which time, in pursuance of the guardianship proceedings instituted by plaintiff in the County Court of Jackson County, Oregon, the said William M. Whetstone was, without the consent of H. F. and Della M. Whetstone and against their protest, taken from the care and custody of said H. F. and Della M. Whetstone"; that these defendants were "at all times willing to, and did, comply with the terms and conditions of their said agreement," and should be and are now "required to comply with the terms and conditions of the said contract to support and care for the said William M. Whetstone"; that the lands of H. F. Whetstone, purchased with the proceeds of the sale of the 55-acre tract, should not be impressed with a trust for the benefit of W. M. Whetstone; that it was never the intention of the defendants and their grantor that "the said lands should be impressed with any such trust or obligation"; that the conveyance was absolute, by reason of which they became the owners of the land in fee simple, and that the consideration therefor "was the agreement on the part of said defendants H. F. and Della M. Whetstone to support and care for said William M. Whetstone in accordance with the terms and conditions of their said contract with the said Almira Whetstone." Based upon such findings, the court rendered a decree that the contract is now in full force and effect; that the defendants Whetstone "are required to support and care for the said William M. Whetstone mentioned in the pleadings therein at their place of residence

and in the manner provided in said contract''; and that the complaint should "be and hereby is dismissed." The plaintiff appeals.

AFFIRMED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. A. E. Reames.*

For respondents, Whetstone, there was a brief with oral arguments by *Mr. Gus Newbury* and *Mr. Porter J. Neff.*

For respondent, H. N. Lofland, there was a brief submitted over the name of *Mr. Newton W. Borden.*

JOHNS, J.—W. M. Whetstone was helpless and feeble-minded, and his mother cared for and looked after him during her lifetime. It is apparent that it was her intention to make ample provision for his support and maintenance during the remainder cf his life after her death, and that the conveyance of the 55-acre tract to her son H. F. Whetstone and his wife was made in good faith for that purpose. There is no evidence tending to show the probable or reasonable cost of that maintenance; but it appears that the land then had a minimum rental value of $125 a year, and a maximum of $250. The conveyance of the 55-acre tract of the Whetstones was absolute and "in consideration of the premises and of said conveyance of said real estate." The grantees covenanted and agreed that "during the remainder of the natural life of said William M. Whetstone we will at our own cost and expense well and suitably maintain, support, and provide for said William M. Whetstone," supply him with a home, treat him as a member of their family, and

furnish him with the necessaries and comforts of life suitable to his station, of "equally as good quality and character as we shall supply and furnish for ourselves or any other member of our family," so long as he should remain in his right mind and submit to their reasonable control and management. It was stipulated that the contract should not be so construed as to require the grantees to support or care for W. M. Whetstone in case of his becoming insane, if it should become necessary to remove him to an asylum or if it should be impossible to keep him at their home as a member of their family.

At the time of the sale of the 55-acre tract to Parker, on September 1, 1909, Almira Whetstone executed the instrument whereby she purported to "release the lands described in the deed above referred to from any lien, claim, or demand whatsoever for the care, support, and maintenance of the said William M. Whetstone and from any and all claims and demands of any kind or character whatsoever." Notwithstanding the fact that she then had a dower interest in the lands, by her written instructions the full amount of the purchase price was paid to her son H. F. Whetstone. The instrument of September 1, 1909, was not signed by the defendants Whetstone, but it was for their use and benefit. As a result of its execution the land was sold, and they received the proceeds of sale.

After the death of the mother, W. M. Whetstone continued to live with the defendants Whetstone, who provided for his care and support until the plaintiff was appointed his guardian. Although there is a sharp conflict in the testimony and some of it tends to show that they were derelict in their duty, we think that the evidence supports the findings of the Circuit Court to the effect that the Whet-

stones were substantially complying with the terms of the written contract at the time the guardian was appointed. The original contract was in writing, and it was the only consideration for the conveyance of the 55-acre tract to them. The instrument executed on September 1, 1909, on its face purports to be a full and complete release of the Whetstones from any and all liability under the contract. The fact remains that they received all of the proceeds of the sale; that the sale was made before any liability attached to them under the contract; that after the execution of that release there was remaining no evidence of their continuing liability; and that without such liability there would not be any consideration for the original conveyance by Almira Whetstone.

It is also true that at no time was such liability on the part of the defendants Whetstone known until the answer was filed and their testimony was taken in this suit. Prior thereto, and after the death of the mother, all of such evidence was in parol and within the personal knowledge of the Whetstones only. Although after the death of the mother they continued to care for the feeble-minded son, there is no evidence that they were doing so in compliance with the terms of the contract, that the instrument continued to be binding upon them; that it was their intention to carry out its provisions, or that it remained in legal force and effect. It was under such a state of facts that the plaintiff applied to the County Court and was by it appointed guardian of the person and estate of W. M. Whetstone, that Lofland was appointed administrator of the estate of Almira Whetstone, deceased, and that this suit was brought.

The mother, who executed the deed and the release at the time of the sale, is dead, and her son whom she sought to protect is feeble-minded and not a competent witness. Whatever may be the actual facts, the evidence tends to show that she knew and understood what she was doing and was not acting under any undue influence.

This case depends upon the legal force and effect of the deed of the 55-acre tract from Almira Whetstone to H. F. and Della M. Whetstone, the contract for the maintenance and support of the feeble-minded son, the purported release of that contract, and the subsequent proceedings and conduct of the parties.

1. It has been settled by numerous decisions of this court that there is no vendor's lien in this state. The conveyance here involved was absolute and passed a fee-simple title to the grantees. The consideration therefor was the agreement to provide for and support W. M. Whetstone for the remainder of his life after the death of his mother. In Perry on Trusts (6 ed.), Section 235, it is said:

"If the vendor makes the sale for the consideration of his future support, no lien will arise."

In *McCandlish* v. *Keen*, 13 Grat. (Va.) 615, 630, it was held:

"The conveyance is in consideration of the covenant of the grantee that his estate shall pay the annuity, and the vendor's lien does not attach upon the property. * *

"Upon the whole, I feel no doubt that Mrs. Byrd was content with the personal security of Coke, and that at the time of executing the instrument, neither party contemplated or thought of a lien. And to set it up here would be to carry the doctrine further than it has ever yet gone, which, in view of the ex-

pressions of eminent judges against the policy of such a lien and the marked sense of the legislature in its total abolition by statutory enactment, I certainly am not prepared to do."

In *McKillip* v. *McKillip*, 8 Barb. (N. Y.) 552, it is said:

"Thus, where A. conveys land to B., and in consideration thereof B. covenants with A. to support and maintain him and J., his lunatic son, the covenant creates no lien upon the land in favor of J. * *

"It follows, therefore, that the bond could not be declared an equitable encumbrance on the land, even in behalf of the obligee, Archibald, and *a fortiori* in behalf of the lunatic, who is merely a beneficiary."

In *Arlin* v. *Brown*, 44 N. H. 102, 105, the rule is thus stated:

"No such lien will exist where no purchase money is agreed to be paid for the land, but where the only consideration for the conveyance is the agreement of the vendee to support and maintain the vendor during the life of such vendor. * *

"The sole consideration for the conveyance was the parol agreement of Sarah Brown, stated in the bill. When that agreement was made the consideration was paid as the parties agreed. If it was not; still it was an agreement not for the payment of purchase money, but for certain personal services of the most indefinite and unascertainable character; and for a nonperformance of which a recovery could only be had of damages altogether unliquidated and uncertain. It has not been held anywhere, so far as we have been able to find, that any lien exists for the performance of such a contract."

In *Brawley* v. *Catron et al.*, 8 Leigh (Va.), 522, it is held that:

"The agreement for supporting the vendor and his daughters constitutes no lien in equity upon the land."

In *Peters et ux.* v. *Tunell,* 43 Minn. 473, 476 (45 N. W. 867, 19 Am. St. Rep. 252), we find:

."The contract was not to be performed by a single act, and once for all; but performance was to extend indefinitely over a period, it might be, of many years, and was to consist of various acts besides the payment of money. What was required to be done was contingent and uncertain, depending · upon future events impossible to be calculated or ascertained, and this uncertainty as to what was to be done would continue indefinitely. There was no lien, unless it existed from the beginning, at the time of the conveyance, and before any obligation had become defined, certain, and ascertainable. It certainly has not been generally supposed that the doctrine of vendor's lien extended to contracts of such a nature."

In *Abbott* v. *Sanders,* 80 Vt. 179 (66 Atl. 1032, 130 Am. St. Rep. 974, 12 Ann. Cas. 898, 13 L. R. A. (N. S.) 725), it is held:

"A conveyance conditioned upon the furnishing of support to the grantor may, upon breach of the condition, be foreclosed by bill as though it were a mortgage."

In the notes in 13 L. R. A. (N. S.) 725, we find:

"It appears to be well settled that an implied equitable lien does not exist in favor of a vendor of real estate to secure the consideration therefor, when such consideration is the maintenance and support of the grantor during life, some cases stating as the reason therefor that the charge is of too uncertain and indefinite a character [authorities]; while in other cases a lien is denied upon the ground that the covenant of the vendee is substituted for the purchase money, or as a mode of payment of the price of the land, and therefore the land is discharged of the lien [citing authorities]."

In *Burroughs* v. *Burroughs*, 164 Ala. 329 (50 South. 1025, 137 Am. St. Rep. 59, 20 Ann. Cas. 926, 28 L. R. A. (N. S.) 607), the opinion says:

"No vendor's lien exists where the consideration for the conveyance of land is an agreement to support the grantor during life."

2. The authorities are also uniform on the proposition that, where such a conveyance is made and there is a breach of the conditions, equity will then create a lien or charge upon the property to carry out the spirit and intent with which the conveyance was made. That was expressly held by this court in *Patton* v. *Nixon*, 33 Or. 159 (52 Pac. 1048), where the syllabus says:

"Equity will grant relief to one who has made a conveyance of property in consideration of her future support, although the plaintiff has a remedy at law, and to avoid a multiplicity of actions will make the maintenance of the plaintiff a charge upon the premises."

It was there alleged and proved that the defendant had refused to keep and perform her agreement. Although the rule is more broadly stated in *Watson* v. *Smith*, 7 Or. 448, yet, when analyzed, that decision is also founded upon a failure or neglect to keep the covenants upon which the conveyance was made. Learned counsel for plaintiff has filed an exhaustive brief, but he has not cited and we have not found an authority which holds, under facts such as are shown to exist in this case, that there is or was an equitable lien on the 55-acre tract in favor of W. M. Whetstone.

The facts are peculiar. The execution of the original contract for support and of the purported release is admitted. The plaintiff contends that the

release was procured and the proceeds of the sale were paid over to the defendants through the exercise of undue influence upon Almira Whetstone. The defendants Whetstone affirmatively allege that, notwithstanding the release, they are still bound by the parol agreement, as though the release had never been executed. As stated, the testimony does not show that there was any breach of the conditions by which the conveyance from Almira Whetstone was made, and that was the finding of the trial court. Although the original contract and release were in writing, the agreement between Almira Whetstone and the defendants Whetstone was in parol and was a matter within their exclusive personal knowledge. There is no evidence, verbal or written, tending to show that after the release was executed and prior to the filing of their answer in this suit the defendants Whetstone were bound by the original contract or that they recognized and admitted that it continued to remain in force and effect. It is true that in answering the citation of the County Court they appeared and pleaded the original contract, but when the release was introduced in evidence they did not file any further pleading showing or alleging that there had been an oral agreement with Almira Whetstone that the written contract should remain in force notwithstanding the release.

It was under such conditions that the plaintiff was appointed guardian by the County Court and obtained control of the feeble-minded W. M. Whetstone. There is no testimony tending to show that after such custody was granted to the plaintiff the defendants Whetstone notified him that the written contract was still in effect and that they were ready and willing to keep and perform its conditions; in other words, they concealed the existence of the oral

agreement with Almira Whetstone from both the
County Court and the guardian who brought this
suit.

3. Although for want of proof the decree of the
Circuit Court must be affirmed on the merits, yet
we are convinced that the suit was brought in good
faith, and it resulted in establishing the legal exist-
ence of a concealed oral contract that the original
pact between Almira Whetstone and the defendants
Whetstone should continue in force and effect, not-
withstanding the release thereof. Under the terms
of the original contract the defendants Whetstone
were to care for and support the feeble-minded son
of Almira Whetstone during his life after the death
of his mother. The guardian was appointed on or
about October 1, 1915, and assumed custody of him
soon thereafter. It appears from the record that at
all times since the guardian at his own expense has
provided a home and maintenance for W. M. Whet-
stone, and that the latter has no estate outside the
contract which his mother made for his support. In
all the circumstances we feel that it would be in-
equitable and unjust if the guardian should not re-
ceive a reasonable compensation for such care and
support of his ward, and that in equity and good
conscience the defendants Whetstone should pay the
amount thereof. There is no evidence presented as
to what would be a proper charge, or anything upon
which this court could base a decree as to the
amount. The cause is therefore remanded to the
Circuit Court with leave to the parties to frame
issues and offer proof as to what would be a just
and reasonable charge, and with instructions to the
court to render a decree in favor of the plaintiff
against the defendants Whetstone for the amount
which he should recover for the care and mainte-

nance of W. M. Whetstone. When the defendants Whetstone shall serve a written notice upon the guardian that they are ready and willing to take and care for W. M. Whetstone as provided' in their original contract with his mother, and that they will keep and perform that agreement, they shall then be released from any further charge or liability to plaintiff; and so long as they comply with the terms of the original contract they shall be and remain free from any other obligation for his care and support. Otherwise, the decree of the Circuit Court is affirmed; neither party to recover costs in this court.

AFFIRMED AND REMANDED.          REHEARING DENIED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.